Opinion filed August 31,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                    Nos. 11-10-00374-CR & 11-10-00375-CR

                                                    __________

 

                     JOHNATHAN
BEDFORD NEWMAN, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 266th District Court

 

                                                            Erath
County, Texas

 

                                       Trial Court Cause
Nos. CR13433 & CR13434

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            Johnathan
Bedford Newman entered an open plea of guilty to two first-degree felony offenses
for the manufacture or delivery of a controlled substance.  The jury sentenced
him to confinement in the Institutional Division of the Texas Department of
Criminal Justice for life on both convictions.  The jury also imposed a fine of
$10,000 for both offenses.  Appellant challenges his punishment in a single
issue.  We affirm.




 

Background
Facts

            Appellant’s
sole issue on appeal arises from the State’s closing argument.  He contends
that his trial counsel rendered ineffective assistance by failing to object to
an argument made by the prosecutor concerning how parole and good conduct time
may affect appellant’s period of incarceration.

            The
court’s charge contained the following instruction pertaining to parole and
good conduct time:

            Under
the law applicable in this case, the Defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time.  Prison authorities may award good conduct time to
a prisoner who exhibits good behavior, diligence in carrying out prison work
assignments, and attempts at rehabilitation.  If a prisoner engages in
misconduct, prison authorities may also take away all or part of any good
conduct time earned by the prisoner.

 

            It is
also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole.

 

            Under
the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time
served plus any good conduct time earned equals one-fourth of the sentence
imposed or 15 years, whichever is less.  Eligibility for parole does not
guarantee that parole will be granted.

 

            It
cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if he is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison
and parole authorities.

 

            You may
consider the existence of the parole law and good conduct time.  However, you
are not to consider the extent to which good conduct time may be awarded to or
forfeited by this particular defendant.  You are not to consider the manner in
which the parole law may apply to this particular defendant.

 

Thus, the
instruction in the court’s charge tracked the language required by Tex. Code Crim. Proc. Ann. art. 37.07,
sec. 4(b) (Vernon 2010).

            During
the State’s initial closing argument, the prosecutor made a brief reference to
the parole instruction contained in the court’s charge by stating that
appellant “becomes eligible for parole when his good conduct time, plus his
actual time served equals a quarter of the sentence or fifteen years, whichever
is less.”  The prosecutor also discussed the applicable range of punishment for
both offenses (five to ninety-nine years, or life) and appellant’s criminal
history (fourteen convictions in the previous seven years, including five
felony drug convictions) during the State’s initial closing argument.

            Appellant’s
trial counsel also made reference to parole and good conduct time during his
closing argument in his plea to the jury to give appellant a twenty-year
sentence.  In this regard, counsel suggested that the jury might “get the
message to [appellant]” to turn his life around if he has the possibility of
being eligible for parole after serving five years of a twenty-year sentence.

            In
the State’s final closing argument, the prosecutor made the following
statements regarding parole and good conduct time:

[T]his defendant may
earn – and I’ve underlined “earn”, and that’s an important word, time off of
the sentence that you give him by the award of good conduct time.  Prison
authorities may award – and I want you to catch my theme here, good conduct
time to a prisoner who exhibits good behavior, diligence in carrying out work –
prison work assignments and attempts at rehabilitation, do you see the theme
here?  But it continues further, it is also possible that the length of time
for which the defendant will be imprisoned might be reduced by the award of
parole.  Now we’ve got two mechanisms working in his favor.  In this case he
will not become eligible for parole until the time he has actually served, plus
good conduct time equals one-fourth of the sentence imposed or fifteen years,
whichever is less.  Now, I want to help you understand what that means.  What
that means is rather than sit there for ten or fifteen or fourteen years, if
you have good behavior and you exhibit that good behavior and diligence in
carrying out prison work assignments and attempts at rehabilitation, remember
when we talked about the things we would like to do when we punish someone,
it’s all there, if he avails himself of it, he can earn and be awarded.  That,
to me, is important to you as a juror in making the decision, when you think
about it, you – you give him the mechanism, if you want to be released back out
here with the rest of us, I know your record doesn’t show us you can do that,
but you convince someone else watching you closely for a period of time that you
deserve to be among the rest of us, then you’ll get out.  But, wait, that’s not
all of it, when we talked about the difference life and ninety-nine years I
told you about fifteen years, but there’s a plus in there, and I want you to be
aware of that, too, you can consider these things, actual time served, plus
good conduct time, do you know what good conduct time is, if you get in there
and behave, you get two days credit for each day you serve, so that fourth
becomes an eighth all of a sudden if you’re behaving yourself, so you just cut
that fifteen in half, that’s seven and a half, if you twelve people give him
ninety-nine years or life, in seven and a half, if he behaves himself, he’ll
walk out that door.  Now, is that an incentive to learn, to work at prison
assignments, exhibit good behavior?  Son, you’ve got the rest of your life in
prison, but if you do the things we ask, in seven and half you can be
released.  Would that make someone want to hit the bricks, go to work?  I think
it would.  Or you can give him fifteen or twenty and let him sit there for a
while and bounce back out and come out worse than when he went in (emphasis
added).

 

Appellant bases
his ineffective-assistance-of-counsel claim on the contention that trial
counsel should have lodged an objection to the italicized portion of the
above-quoted argument.

Analysis

            To determine whether appellant’s counsel rendered ineffective assistance
at trial, we must first determine whether appellant has shown that counsel’s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result of the
proceeding would have been different but for counsel’s errors.  Wiggins v.
Smith, 539 U.S. 510 (2003); Strickland v. Washington, 466 U.S. 668 (1984);
Andrews v. State, 159 S.W.3d 98 (Tex. Crim. App. 2005); Thompson v.
State, 9 S.W.3d 808 (Tex. Crim. App. 1999).  This standard applies to
claims of ineffective assistance of counsel in both the guilt/innocence phase
and the punishment phase of noncapital trials.  Hernandez v. State, 988
S.W.2d 770, 772-73 (Tex. Crim. App. 1999).

            We
must indulge a strong presumption that counsel’s conduct fell within the wide
range of reasonable professional assistance, and an appellant must overcome the
presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Strick-land, 466 U.S. at 689; Tong
v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  “[C]ounsel is
strongly presumed to have rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment.” Strickland,
466 U.S. at 690.  An allegation of ineffective assistance must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson, 9 S.W.3d at 814.  Under normal circumstances,
the record on direct appeal will not be sufficient to show that counsel’s
representation was so deficient and so lacking as to overcome the presumption
that counsel’s conduct was reasonable and professional.  Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002).  Rarely will the record on direct
appeal contain sufficient information to permit a reviewing court to fairly
evaluate the merits of such a serious allegation.  Id.  In a majority of
cases, the record on direct appeal is simply undeveloped and cannot adequately
reflect the failings of trial counsel.  Id.

            As
stated earlier, the challenged argument consisted of the following statement by
the prosecutor:  “[I]f you twelve people give him ninety-nine years or life, in
seven and a half, if he behaves himself, he’ll walk out that door.”  When
viewed in isolation, the challenged argument was improper.  This is an
incorrect statement of the law because parole eligibility does not guarantee
release.  See Article 37.07, § 4(b).  Furthermore, the jury is
explicitly prohibited from considering the extent to which good conduct time
may be awarded to a particular defendant or the manner in which the parole law
may be applied to a particular defendant.  Id.  

A
complaint of improper jury argument is waived absent an objection at trial.  Threadgill v.
State, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004).  Accordingly, appellant
is limited to presenting his improper-jury-argument complaint as an ineffective-assistance-of-counsel
issue.  This case is in the same procedural posture as the circumstances in Mata
v. State, 226 S.W.3d 425, 430-31 (Tex. Crim. App. 2007).   Mata also
involved a claim on direct appeal of ineffective assistance of counsel arising
from the failure of trial counsel to object to an allegedly improper jury
argument concerning the application of parole and good conduct time.  226
S.W.3d at 427-28.  Furthermore, the appellate record in Mata was also silent
regarding trial counsel’s reasoning for not objecting to the challenged
argument.[1] 


The
Court of Criminal Appeals noted in Mata that a reviewing court on direct
appeal will rarely be able to fairly evaluate the merits of an
ineffective-assistance claim because the record on direct appeal is usually
undeveloped and inadequately reflective of the reasons for defense counsel’s
actions at trial.  Id. at 430.  As stated by the court:

The lack of a clear record usually will prevent the appellant from meeting the first
part of the Strickland test, as the reasonableness of counsel’s choices
and motivations during trial can be proven deficient only through facts that do
not normally appear in the appellate record.  It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel’s actions or
omissions during trial were merely of questionable competence. Rather, the
record must affirmatively demonstrate trial counsel’s alleged ineffectiveness.

 

Id. (footnotes
omitted).  The court held in Mata that the appellant failed to rebut the
presumption that trial counsel’s actions were reasonable because the record was
silent as to why he failed to object to the challenged argument.  Id.
at 431.

Mata’s
reasoning is applicable to this case because the appellate record in this
appeal is also silent regarding the basis for trial counsel’s actions.  Thus,
appellant has failed to rebut the presumption that trial counsel’s decision was
reasonable.  See id.  In this regard, the facts in this case are
distinguishable from those in Branch v. State, 335 S.W.3d 893, 904 (Tex.
App.—Austin 2011, pet. filed), because appellant did not present his
ineffective-assistance claim in a motion for new trial that would have provided
an avenue for exploring the reasons for trial counsel’s action.  

Furthermore,
the improper argument that appellant challenges was not incurable and was in
fact “cured” by the written instructions contained in the court’s charge.  In
this regard, an instruction to disregard improper jury argument will cure the
error in most instances. Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).   The court’s charge contained the correct rules
pertaining to the manner in which the jury should consider the application of
parole and good conduct time to appellant’s sentence.   We presume the jury followed the court’s instructions.  Colburn v. State, 966 S.W.2d 511,
519-20 (Tex. Crim. App. 1998).

Under the second prong of Strickland, appellant must show there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 
Evidence was offered that the underlying offenses were based on appellant
possessing 25.84 grams of methamphetamine on one occasion[2]
and 6.34 grams of methamphetamine on another occasion.  Appellant’s criminal
record included a state jail felony conviction for drug possession in 2007, two
state jail felony convictions for drug possession in 2005, a misdemeanor drug
possession conviction in 2003, a misdemeanor conviction for possessing a
prohibited weapon in 2005, three misdemeanor drug possession convictions in
2005, a driving-while-intoxicated conviction in 2007, a driving-while-license-invalid
conviction in 2007, a misdemeanor theft conviction in 2003, and a misdemeanor
burglary-of-a-vehicle conviction in 2005.  Given the presence of the correct
statement of the law contained in the court’s charge, the seriousness of the
underlying offenses, and appellant’s lengthy criminal record, the appellate record
does not show a reasonable probability that the result would have different.  Appellant’s
sole issue is overruled.




 

This
Court’s Ruling

             The
judgments of the trial court are affirmed.

            

                                                                                    

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

August 31, 2011                                                                     

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.









[1]In
this regard, trial counsel’s conduct at trial was not addressed in a motion for
new trial.

 





[2]In
addition to possessing 25.84 grams of methamphetamine on this occasion,
appellant also possessed 6.24 grams of cocaine.